Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| Once & For All Tires LLC. *Recurrente* v. Municipio Autónomo de Barceloneta *Recurrido* Enviro Tab INC. *Licitador Agraciado* Ilustre Solution Contractor INC., Total Quality Maintenance, DFM Contractors LLC. *Licitadores no Agraciados* | TA2025RA00416 | Revisión Administrativa procedente del Municipio Autónomo de Barceloneta Subasta Núm. 06 Serie: 2025-2026 Sobre: Impugnación de Adjudicación de RFP Sobre Request For Repairs To Pista del Complejo Sixto Escobar |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Comparece ante nos, Once & For All Tires, LLC. (Once & For All Tires o recurrente) mediante *Recurso de Revisión Judicial* y solicita la revocación de la resolución de adjudicación de la *Subasta Núm. 06 Serie: 2025-2026 Request for Proposal for Repairs to Pista del Complejo Sixto Escobar*[1] emitida y notificada el 15 de diciembre de 2025 por la Junta de Subastas del Municipio de Barceloneta (Municipio o recurrido). En el referido dictamen, el recurrido le adjudicó la buena pro de la subasta a la compañía Enviro Tab, Inc. (Enviro Tab o licitador agraciado) y no al recurrente.

Por los fundamentos expuestos a continuación, ***revocamos*** la resolución impugnada.

---

[1] Apéndice 2 del *Recurso de Revisión Judicial.*

**I.**

El caso de autos tuvo su origen el 15 de septiembre de 2025, cuando el Municipio publicó un anuncio en el periódico Primera Hora, en el tablón de expresión de la Alcaldía y en la red social Facebook, y solicitó propuestas para la Subasta Núm. 06, Serie 2025-2026, relacionada con el *Request for Proposal for Repairs to Pista del Complejo Sixto Escobar*[2].

El 25 de septiembre de 2025, se celebró una reunión pre-subastas en el salón de conferencias Felisa Rincón, ubicado en el primer piso de la Alcaldía del Municipio[3]. En la reunión, se fijó inicialmente la fecha del 17 de octubre de 2025 para la apertura y recepción de propuestas[4]. Sin embargo, dicha fecha fue pospuesta para el 6 de noviembre de 2025[5]. Ese mismo día, el Municipio recibió las propuestas de las siguientes compañías: Once & For All Tires[6], LLC; Total Quality Maintenance; DFM Contractors, LLC; Ilustre Solutions Contractors, Inc.; y Enviro Tab, Inc[7].

Luego de la apertura de sobres, las ofertas sometidas fueron las siguientes: Once & For All Tires por quinientos veintisiete mil seiscientos sesenta y siete dólares con veintisiete centavos ($527,667.27); Enviro Tab, por seiscientos setenta y tres mil ciento cincuenta y un dólares ($673,151.00); Ilustre Solutions Contractors por setecientos dos mil cuatrocientos setenta y ocho dólares ($702,478.00); Total Quality Maintenance por ochocientos siete mil seiscientos doce dólares con doce centavos ($807,612.12); DFM Contractors, LLC por un millón ciento veintiún mil quinientos sesenta dólares con noventa y cinco centavos ($1,121,560.95)[8].

---

[2] *Íd.*, pág. 4.
[3] *Íd.*
[4] *Íd.*
[5] *Íd.*
[6] Apéndice 3-7 del *Recurso de Revisión Judicial*.
[7] Apéndice 2 del *Recurso de Revisión Judicial*, pág. 4.
[8] *Íd.*

Recibidas las propuestas, las mismas fueron referidas a la dependencia municipal que solicitó la subasta para su evaluación y recomendaciones. Asimismo, se le solicitó a la compañía Capital Improvements Program Management (CIPM) su evaluación y recomendación.

El 15 de diciembre de 2025, el Municipio emitió y notificó la resolución de adjudicación de la *Subasta Núm. 06 Serie: 2025-2026 Request for Proposal for Repairs to Pista del Complejo Sixto Escobar*. Mediante el referido dictamen, el recurrido adjudicó la buena pro de la subasta a la compañía Enviro Tab por la cantidad de seiscientos setenta y tres mil ciento cincuenta y un dólares ($673,151.00).

Por su parte, el 17 de diciembre de 2025, el recurrente sometió una *Solicitud de Acceso y Copia del Expediente Administrativo Subasta Núm. 06, Serie: 2025-2026 Request for Proposal for Repairs to Pista del Complejo Sixto Escobar*[9]. Al día siguiente, el recurrido le informó que, ante el receso navideño, se comunicaría a partir del 7 de enero de 2026 para proceder con la inspección del expediente[10].

Insatisfecho, el 22 de diciembre de 2025, el recurrente presentó el recurso ante nuestra consideración y le imputó a la Junta de Subastas del Municipio Autónomo de Barceloneta (Junta de Subastas) los siguientes señalamientos de error:

> **PRIMER ERROR**: ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BARCELONETA AL EMITIR UNA NOTIFICACIÓN DE ADJUDICACIÓN JURÍDICAMENTE DEFECTUOSA, EN CRASO INCUMPLIMIENTO CON LOS REQUISITOS MÍNIMOS DE ADECUACIDAD EXIGIDOS POR EL DEBIDO PROCESO DE LEY, EL ARTÍCULO 2.040 DEL CÓDIGO MUNICIPAL DE PUERTO RICO Y LA DOCTRINA DEL TRIBUNAL SUPREMO, IMPIDIENDO QUE COMENZARAN A TRANSCURRIR VÁLIDAMENTE LOS TÉRMINOS JURISDICCIONALES PARA IMPUGNAR LA DETERMINACIÓN ADMINISTRATIVA.

> **SEGUNDO ERROR**: ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BARCELONETA AL ADJUDICAR LA SUBASTA DE FORMA ARBITRARIA, CAPRICHOSA Y EN ABUSO DE DISCRECIÓN, AL DESCARTAR SIN MOTIVACIÓN ALGUNA AL POSTOR RAZONABLE MÁS BAJO

---

[9] Apéndice 8 del recurso de *Revisión Judicial*.
[10] Apéndice 9 del recurso de *Revisión Jucicial*.

Y NO ARTICULAR CÓMO LA ADJUDICACIÓN A UN POSTOR DE MAYOR COSTO BENEFICIA EL INTERÉS PÚBLICO.

**TERCER ERROR**: ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BARCELONETA AL NO PERMITIR EL ACCESO Y REPRODUCCIÓN AL EXPEDIENTE ADMINISTRATIVO DE LA SUBASTA DENTRO DEL TÉRMINO PARA RECURRIR AL TRIBUNAL DE APELACIONES EN VIOLACIÓN AL DERECHO DE ACCESO A LA INFORMACIÓN PÚBLICA Y DEL DERECHO A UNA REVISIÓN JUDICIAL ADECUADA, PRIVANDO A LA PARTE RECURRENTE EJERCER CABALMENTE SU DERECHO A REVISIÓN JUDICIAL DE DICHA DETERMINACIÓN ADMINISTRATIVA.

Ese mismo día, el recurrente presentó una *Moción en Solicitud de Auxilio de Jurisdicción,* en la cual solicitó la paralización de la adjudicación de la subasta y de cualquier paso dirigido a formalizar o ejecutar el contrato hasta tanto se disponga del recurso de revisión. De igual forma, solicitó que se ordene la producción y acceso inmediato al expediente administrativo completo, evaluaciones, informes y recomendaciones consideradas en la adjudicación, para asegurar que este Tribunal pueda ejercer su función revisora. También, presentó una *Moción al Amparo de la Regla 74(F)* en la que solicitó que se elevara el expediente administrativo correspondiente a la Subasta Núm. 06, Serie 2025-2026.

El 23 de diciembre de 2025[11], este tribunal emitió y notificó una *Resolución* en la cual declaró *Ha Lugar* la *Moción en Solicitud de Auxilio de Jurisdicción* presentada por el recurrente y le concedió al recurrido un término de veinte (20) días para que presentara su alegato.

El 7 de enero de 2026, el recurrido presentó una *Moción en Solicitud de Prórroga con Firma Corregida.* En ésta, solicitó un término de catorce (14) días para presentar su alegato, debido a que el Municipio se encontraba en receso navideño del 19 de diciembre 2025 al 7 de enero de 2026.

---

[11] Notificada en igual fecha.

El 12 de enero de 2026[12], este tribunal intermedio emitió una *Resolución* en la que declaró *Ha Lugar* la *Moción al Amparo de la Regla 74(F)* y, a su vez, le concedió al recurrido la prórroga solicitada para presentar su alegato hasta el 26 de enero de 2026.

En cumplimiento con lo anterior, el recurrido sometió su alegato el 22 de enero de 2026. Adujo que, la notificación de la determinación recurrida cumplía con los requisitos mínimos de una debida notificación. No obstante, advirtió que, por un error inadvertido, en las conclusiones de hechos en la página dos (2) de la determinación de la reproducción de la Evaluación de Subasta de CIPM fue borrosa.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[13]. Por su parte, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG) establece el marco de revisión judicial de estas decisiones[14]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[15].

Debido a la vasta experiencia y conocimiento especializado

---

[12] Notificada el 13 de enero de 2026.
[13] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).
[14] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.
[15] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[16]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[17]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[18].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[19]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[20]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[21].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó

---

[16] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[17] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025), *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

[18] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Trigo Margarida v. Junta Directores, supra*, págs. 393-394; *Mundo Ríos v. CEE et al.*, 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[19] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

[20] *Super Asphalt v. AFI y otro, supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra*, pág. 394.

[21] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[22].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[23]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[24].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[25].

Por otra parte, es menester señalar que a los municipios no les aplican las disposiciones de la LPAUG, ya que están expresamente excluidos de la definición de "Agencia"[26]. Sin embargo, un licitador o participante de una subasta formal o un *Request for Proposal* ("RFP") puede cuestionar vía revisión judicial la

---

[22] *OEG v. Martínez Giraud, supra*, pág. 90; *Super Asphalt v. AFI y otro, supra*, pág. 819, citando a *Torres Rivera v. Policía de PR, supra*, pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[23] *González Segarra v. CFSE, supra*, pág. 277; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011).

[24] *González Segarra v. CFSE, supra*; *Pereira Suárez v. Jta. Dir Cond., supra*, pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

[25] *González Segarra v. CFSE, supra*, págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra*, pág. 217, citando a *Rebollo v. Yiyi Motors, supra*.

[26] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco*, 202 DPR 525, 533 (2019).

adjudicación de una subasta[27], bajo el mismo principio de deferencia judicial que se les brinda a las agencias administrativas.

**-B-**

La subasta formal y el RFP son los dos métodos utilizados por el Estado para adquirir sus bienes y servicios[28]. Como fin principal, estos procesos buscan "proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles"[29].

El RFP "se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el [G]obierno y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios"[30]. Se recurre a este procedimiento "cuando se trata de la adquisición de bienes o servicios especializados —que involucran asuntos altamente técnicos y complejos— o cuando existen escasos competidores cualificados"[31]. El RFP debe incluir aquellos requisitos y factores que se utilizarán para la adjudicación del contrato; el valor o peso que se asigne a éstos; y las fechas en que se recibirán y evaluarán las propuestas y se adjudicará la buena pro[32].

Las subastas tradicionales o el RFP que adjudique una Junta de Subastas municipal estarán reguladas por la Ley Núm. 107 de 14 de agosto de 2020, según enmendada, conocida como el "Código Municipal de Puerto Rico" (Código Municipal), y el "Reglamento para la Administración Municipal Núm. 8873" de la Oficina del Comisionado de Asuntos Municipales de 19 de diciembre de 2016 (Reglamento Núm. 8873)[33].

---

[27] *Íd.*, págs. 532-533 citando *R & B Power v. ELA*, 170 DPR 606, 624 (2007).
[28] *Transporte Sonnell, LLC v. Junta de Subastas*, 214 DPR 633, 649 (2024).
[29] *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019).
[30] *St. James Sec. v. AEE*, 213 DPR 366, 377-378 (2023) citando a *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531- 532 (2019).
[31] *St. James Sec. v. AEE*, 213 DPR 366, *supra,* pág. 378 citando a R & B Power v. E.L.A., *supra*, págs. 621-622.
[32] *Íd.*, pág. 622.
[33] *PR Eco Park et al. v. Mun. de Yauco, supra*, págs. 533- 534 (2019).

Como regla general, un municipio adjudicará una subasta sobre suministros de servicio, de compras o de construcción al postor más bajo. Esto, debido a que, el objetivo de las subastas es proteger el erario "[c]onsiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible"[34]. Conforme con lo antes mencionado, el Artículo 20.040 del Código Municipal dispone que:

> "[l]a Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros"[35].

De igual forma, el inciso (a) del precitado Artículo provee los criterios de adjudicación, los cuales son:

> […]

> a. Criterios de adjudicación — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor **razonable más bajo**. […] La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
> **La Junta podrá adjudicar a un postor <u>que no sea necesariamente el más bajo</u>** o el más alto, según sea el caso, **si con ello se beneficia el interés público**. **<u>En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación</u>**[36]. (Énfasis nuestro).

> […]

Por otra parte, el Reglamento Núm. 8873, *supra,* provee la norma general para la adjudicación de las subastas, en lo particular dispone que:

> La adjudicación de las subastas de adquisición, se harán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento y que reúna los siguientes requisitos:
> (a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.
> (b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas

---

[34] *Aut. Carreteras v. CD Builders, Inc.,* 177 DPR 398, 404 (2009). Citando a *RBR Const., SE v. AC,* 149 DPR 836, 848 – 849 (1999).

[35] 21 LPRA sec. 7216.

[36] *Íd.*

superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

**De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura**. (Énfasis Nuestro)[37].

Referente a la controversia que nos ocupa, en la Sección 13 del Capítulo VIII del Reglamento Núm. 8873 dispone que:

[...]

(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:
    a) nombre de los licitadores;
    b) síntesis de las propuestas sometidas;
    c) **factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidoso**s;
    d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;
    e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones[38]. (Énfasis nuestro).

[...]

Conforme a los antes expuesto, nuestro Máximo Foro ha reconocido que el derecho a cuestionar una adjudicación o determinación final, mediante el mecanismo de revisión judicial, es parte del debido proceso de ley[39]. Ante ello, resulta indispensable que se notifique adecuadamente a todas las partes cobijadas por ese derecho[40]. Si no se cumpliera con estas garantías mínimas, el derecho a revisar la determinación de la Junta de Subastas sería ineficaz ya que el propósito de la notificación es que los licitadores perdidosos tengan la oportunidad de solicitar revisión judicial dentro del término jurisdiccional aplicable[41]. Es menester

---

[37] Sec. 11, Cap. VIII, Parte II, Reglamento Núm. 8873.
[38] Secc. 13, Cap. VIII, Parte II, *Reglamento Núm. 8873.*
[39] *Puerto Rico Asphalt v. Junta, supra*, pág. 740.
[40] *Íd.*
[41] *Íd.*

puntualizar que, si la notificación en cuestión adolece de los requisitos establecidos por la legislación y reglamentación, procede devolver el asunto para que se emita una notificación que cumpla con ello[42].

**III.**

En el caso de epígrafe, Once & For All Tires, LLC adujo que el recurrido incidió al: (1) emitir una notificación de adjudicación defectuosa que impidió el inicio válido de los términos jurisdiccionales; (2) no adjudicar la subasta al postor más bajo sin justificación y; (3) negar el acceso al expediente administrativo, afectando la revisión judicial.

Por su parte, el Municipio arguyó que la notificación de adjudicación de la determinación recurrida cumplía con los requisitos mínimos de una debida notificación. Sin embargo, admitió que, "por un error inadvertido en las conclusiones de hecho de la Resolución pág. 2 margen superior la reproducción de la Evaluación de Subasta de CIPM de tres páginas fue borrosa".

Por estar íntimamente relacionados, discutiremos en conjunto los tres (3) señalamientos de error. Así pues, luego de un análisis minucioso del expediente ante nuestra consideración, colegimos que, los tres errores fueron cometidos. Veamos.

La Sección 13 del Capítulo VIII del Reglamento Núm. 8873, *supra*, establece los criterios de adjudicación de las subastas. A tales efectos, dispone que la notificación de adjudicación que emita la Junta de Subastas debe contener: los nombres de los licitadores, una síntesis de las propuestas, los factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos y apercibir del término de diez (10) días para solicitar revisión judicial.

---

[42] *Puerto Rico Asphalt v. Junta, supra*, pág. 742.

Por otra parte, el Artículo 20.040 (a) del Código Municipal, *supra*, provee para que la Junta pueda adjudicar a un postor que no sea el más bajo. **No obstante, de así hacerlo, la Junta deberá hacer constar por escrito las razones que justifiquen tal adjudicación**.

Por esa misma línea, la Sección 11 del Capítulo VIII, Parte II del Reglamento Núm. 8873, *supra*, indica que la adjudicación de las subastas, se harán a favor del licitador que cumpla con los requisitos y al que sea la más baja en precio o que, aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación. Específicamente, la precitada sección dispone que:

> **De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoría futura**. (Énfasis Nuestro)[43].

En el caso de autos, el Municipio incumplió con los requisitos establecidos en la Sección 13 del Capítulo VIII del Reglamento Núm. 8873, *supra*. Esto, debido a que se limitó a enumerar los montos de las diferentes propuestas de los licitadores, sin contener una síntesis real de las propuestas y tampoco identificó los factores o criterios que tomó en consideración para elegir al mejor licitador. De igual manera, no señaló los defectos de las propuestas de los licitadores no agraciados ni algún análisis comparativo entre las propuestas sometidas.

Asimismo, se incumplió con el Artículo 2.040 (a) del Código Municipal, *supra*, y la Sección 11 del Capítulo VIII, Parte II del Reglamento Núm. 8873, *supra*, el cual requiere que, la notificación de la adjudicación de la subasta incluya las razones aludidas como

---

[43] Sec. 11, Cap. VIII, Parte II, Reglamento Núm. 8873, *supra*.

beneficiosas al interés público que justifique tal adjudicación. Tal justificación o explicación no obra en el expediente.

Puntualizamos que, el recurrido admitió en su escrito un error en las conclusiones de hechos en la página dos (2) de la determinación de la reproducción de la Evaluación de Subasta de CIPM, pues la misma fue borrosa. Lo antes expuesto, es importante destacarlo, debido a que el Municipio **expresó que la inexistencia de motivaciones para justificar adjudicar la subasta a un postor más alto estaba subsanado al ver la Evaluación de CIPM.** Sin embargo, resulta contradictoria dicha alegación, pues cómo el recurrente pudo haber tomado conocimiento de las razones por las que eligieron a un licitador con una propuesta de mayor valor, cuando el propio Municipio reconoció que la Evaluación de CIPM es ilegible por estar borrosa.

Por otra parte, nos resulta inaudito que el Municipio no haya anticipado que la adjudicación de la subasta se hizo en un periodo festivo y que si el recurrente requería acceso al expediente administrativo, como bien ocurrió, la revisión judicial se vería afectada. Recordemos que, nuestro Tribunal Supremo ha dispuesto que una parte con interés en impugnar la adjudicación de una subasta estará en mejor posición de ejercer su derecho una vez ha examinado el expediente del procedimiento[44].

Surge de la Sección 13 del Capítulo VIII del Reglamento Núm. 8873, *supra*, que el derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, es dentro del **término jurisdiccional** de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación. En el caso de autos, la notificación de la adjudicación de la subasta fue el 15 de diciembre de 2025 y dos días después el recurrente solicitó el

---

[44] *Trans Ad de P.R. v. Junta de Subastas,* 174 DPR 56, 70 (2008).

acceso al expediente. No obstante, el Municipio informó que estaría de receso navideño hasta el 7 de enero de 2026. Evidentemente, Once & For All Tires tenía el derecho de examinar el expediente antes de acudir a nuestra Curia. Ante la seriedad de este error, no nos persuade la débil justificación del Municipio para no permitir el acceso al expediente requerido, de tal forma, su determinación se aparta del ordenamiento jurídico y no cabe duda de que dicha determinación municipal es totalmente irrazonable y arbitraria

Al considerar las circunstancias de este caso en unión al legajo apelativo, somos de la opinión que no existe prueba sustancial que sustente la determinación del Municipio. El Municipio reconoce expresamente que Once & For All Tires presentó la oferta más baja de todas las propuestas recibidas, por la cantidad de quinientos veintisiete mil seiscientos sesenta y siete dólares con veintisiete centavos ($527,667.27); mientras que, la adjudicación de la subasta se hizo a favor de Enviro Tab por seiscientos setenta y tres mil ciento cincuenta y un dólares ($673,151.00) una diferencia sustancial de ciento cuarenta y cinco mil cuatrocientos ochenta y tres dólares con setenta y tres centavos ($145,483.73) en perjuicio directo de los fondos públicos municipales.

Apuntalamos que, la determinación de adjudicación no identifica defecto técnico alguno en la propuesta del recurrente; no señala incumplimiento con el pliego de subasta; no cuestiona su capacidad económica, técnica u operacional; no hace referencia negativa alguna a su experiencia, historial de cumplimiento o integridad comercial. Es decir, el recurrido no esbozo razón válida alguna para descartar al postor razonable más bajo.

Es norma reiterada que, la adjudicación a un postor que no sea el más bajo solo es válida si la Junta consigna, de manera específica y motivada, las razones que justifican que dicha decisión sirve mejor el interés público. Ese análisis no puede ser genérico,

debe surgir claramente del expediente. Aquí, la Junta se limitó a una expresión conclusoria, "por ser lo más beneficioso para el Municipio", sin explicar por qué pagar ciento cuarenta y cinco mil cuatrocientos ochenta y tres dólares con setenta y tres centavos ($145,483.73) adicionales resulta beneficioso, ni cómo esa diferencia se traduce en mayor calidad, mejores garantías, menor riesgo o ventaja objetiva alguna para el Municipio.

Ciertamente, la Junta de Subastas incurrió en la deficiencia señalada por el recurrente al incumplir con lo dispuesto en el Artículo 2.040 del Código Municipal[45] y a la Sección 11 del Capítulo VIII del Reglamento Núm. 8873.

En fin, el expediente ante nuestra consideración no contiene evidencia alguna que sustente la determinación recurrida y, al Municipio no haber argumentado razón alguna para apartarse de la norma jurídica en cuanto a favorecer al licitador más económico, procedía la adjudicación de la buena pro de la subasta a Once & For All Tires.

**IV.**

Por los fundamentos expuestos, dejamos sin efecto la paralización de los procedimientos emitida el 23 de diciembre de 2025, *revocamos* la resolución recurrida y *ordenamos* la adjudicación de la *Subasta Núm. 06 Serie: 2025-2026 Request for Proposal for Repairs to Pista del Complejo Sixto Escobar* al recurrente, Once & For All Tires, quien sometió la propuesta más económica.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[45] 21 LPRA secc. 7216.